# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JOHN BECK, DANNY JACKSON, )
LARRY MUCK, JAMES HARMON, )
and JIM BEAVERS, )
 )
         Plaintiffs, )
 )
vs. ) Case No. CIV-14-770-M
 )
OKLAHOMA GAS AND ELECTRIC )
COMPANY, )
 )
         Defendant. )

## **ORDER**

This case is scheduled for trial on the Court's June 2017 trial docket.

Before the Court are defendant Oklahoma Gas and Electric Company's ("OG&E") Motion for Summary Judgment against Plaintiff John Beck, OG&E's Motion for Summary Judgment against Plaintiff Danny Jackson, OG&E's Motion for Summary Judgment against Plaintiff Larry Muck, OG&E's Motion for Summary Judgment against Plaintiff James Harmon, OG&E's Motion for Summary Judgment against Plaintiff Jim Beavers, and plaintiffs' Motion for Summary Judgment, all filed August 1, 2016. These motions have been fully briefed. Also before the Court is OG&E's Motion to Strike Plaintiffs' Response and Objection to the Declaration of Kenneth McKinzie, filed August 29, 2016. On September 19, 2016, plaintiffs filed their response, and on September 26, 2016, OG&E filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Background

Plaintiffs were all employed by OG&E as Local Representatives/Area Servicemen ("Local Reps") during the pertinent time periods in this case. OG&E is an electric utility company

authorized to provide reliable electric service to more than 800,000 commercial and residential customers in Oklahoma and Western Arkansas. OG&E divides its operations geographically into districts. Plaintiffs worked in the Ardmore District. The Ardmore District is subdivided into zones, which are named for the largest town in the area: Ardmore, Durant, Healdton, Madill, Sulphur, Ada, and Paul's Valley.

As Local Reps, plaintiffs were responsible for installing, maintaining, and repairing electrical service and metering equipment in their zone. They were also responsible for operating and maintaining electrical distribution facilities and street light systems and representing OG&E through civic engagement. Plaintiffs were "first responders" for OG&E. While working during their regularly scheduled shift and while on-call, they were expected to be the first employee from OG&E to respond to service restoration calls or power emergencies in their zone, such as downed power lines, electrical fires, or storms. This work is sometimes referred to as "trouble calls" or "trouble tickets."

As Local Reps, plaintiffs worked a regular schedule Monday through Friday, from 7:00 a.m. until 3:30 p.m. Plaintiffs were on-call for all periods of time outside their regular schedule, from 3:31 p.m. to 6:59 a.m. Monday through Friday and all day on Saturday and Sunday. OG&E's Overtime Policy provides:

> Members are not paid for being On-Call. When called to perform work, the member is paid under Call-Out provisions (see section 20.03).
> Members On-Call may not be restricted to the point that they are unable to perform most daily activities. However, members assigned to On-Call will be required to respond within a reasonable time as defined by the Business Unit.

2

Overtime For Nonexempt Members Policy Handbook, section 20.05, attached as Exhibit 2 to plaintiffs' responses to OG&E's motions for summary judgment. When plaintiffs were sick, on vacation, or when they found another OG&E employee to cover their calls, they were not on-call; however, they were still required to answer their phones, were sometimes called while they were sick, on vacation, or had another employee covering their calls, and would sometimes respond to those trouble calls.[1]

OG&E's Overtime Policy defines a Call-Out as "a member being summoned to a worksite after that member has left the worksite and prior to the next regularly scheduled workday." Overtime for Nonexempt Members Policy Handbook, section 10.02.02, attached as Exhibit C to the Declaration of Kenneth McKinzie in Support of Defendant Oklahoma Gas and Electric Company's Motions for Summary Judgment. Plaintiffs were summoned to the worksites after hours when they were on-call and a customer in their zone called OG&E's interactive voice response system ("IVR system") or the customer service department with a trouble ticket. Customer service or the IVR system would then provide the information about the trouble ticket to the Dispatch Control Center ("DCC"), and DCC would contact plaintiffs on their OG&E issued cell phone. If plaintiffs accepted the trouble ticket, DCC would send the ticket number associated with the call, the location, and the nature of the problem to plaintiffs' computer, called a Mobile Data Unit ("MDU").[2] There were also

---

[1] Plaintiffs had five weeks of paid vacation each year. Additionally, OG&E pays Local Reps for eleven holidays each year, including two floating days and one for their birthday. Local Reps remain on-call on holidays, but they are not expected to do any work unless they are Called-Out. If Called-Out on a holiday, Local Reps were paid two and a half times their hourly wage. OG&E also gives ten paid sick days a year to Local Reps, which accumulate from year to year if not used.

[2] The MDU computers did not always work and were not always reliable to record plaintiffs' time accurately.

times that customers would call plaintiffs directly and did not go through customer service. When customers called plaintiffs directly, they did not get paid unless they actually worked the call. After receiving a Call-Out, plaintiffs would travel to the location and assess the situation. Upon arrival, they would either perform the work necessary to fix the problem or inform DCC that follow-up work was necessary.

While on-call, OG&E expected plaintiffs to remain sober and fit to report to work and to don appropriate safety clothing before responding to a Call-Out. Plaintiffs were also expected to live within thirty minutes of their assigned zone. Additionally, plaintiffs were expected to respond to Call-Outs within a "reasonable" time – to be in their OG&E truck and driving to the location of a trouble call within a "reasonable" time, which most plaintiffs viewed as within thirty minutes of receiving the call.[3]

Local Reps are paid on an hourly basis. They are not paid for the time spent waiting on-call and are only paid for the time spent responding to Call-Outs. For Call-Outs, Local Reps are paid a minimum of two hours recorded time at the appropriate daily overtime rate when called from home to the worksite for emergency repair work.

On July 21, 2014, plaintiffs filed the instant action, asserting claims against OG&E to recover for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for the time they spent on-call. Plaintiffs and OG&E now move this Court for summary judgment.

---

[3]Plaintiff James Harmon viewed a "reasonable" time as within fifteen to thirty minutes of receiving the call.

II.   Discussion

   A.   OG&E's Motion to Strike

OG&E has filed a motion to strike plaintiffs' Response and Objection to the Declaration of Kenneth McKinzie in Support of Defendant Oklahoma Gas and Electric Company's Motion for Summary Judgment.  As set forth below, even considering plaintiffs' response and objection to the Declaration of Kenneth McKinzie, the Court finds OG&E is entitled to summary judgment. Accordingly, the Court finds that OG&E's motion to strike is moot.

   B.   Motions for summary judgment

      1.   Standard of review

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

### 2. Merits

With certain exceptions not relevant to the instant matter, the FLSA requires an employer to pay a minimum wage for each hour it "employ[s]" an employee, as well as an overtime premium for hours in excess of forty per week. *See* 29 U.S.C. §§ 206, 207, 213. "Employ" is defined as including "to suffer or permit to work." *Id.* § 203(g). In the case at bar, the pertinent question is whether on-call time is "work" for purposes of the FLSA. The relevant inquiry when making this determination is "whether an employee is engaged to wait or waiting to be engaged, or, alternatively, whether on-call time is spent predominantly for the benefit of the employer or the employee." *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000) (internal quotations and citations omitted). This inquiry is highly individualized and fact based. *See id.* A court should consider "the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time, and all surrounding circumstances." *Id.* (internal quotations and citations omitted). A court should also focus on "the degree to which the burden on the employee interferes with his or her personal pursuits" and in assessing that burden, should consider the "number of calls, required response time, and ability to engage in personal pursuits while on call."[4] *Id.* (internal citations omitted). Further, "[a]lthough always being on call is not dispositive, such an added burden is relevant in assessing the extent to which the all-the-time on-call duty deprives employees of the ability to engage in personal activities." *Id.* at 1134-35. Finally, "the test is not whether there was some restriction on Plaintiff's personal activities. Rather the test is whether

---

[4] The frequency of calls can be a determinative factor.

6

Plaintiff's on-call time was spent predominantly for the benefit of his employer." *Andrews v. Town of Skiatook, Okla.*, 123 F.3d 1327, 1332 (10th Cir. 1997).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiffs and viewing all reasonable inferences in plaintiffs' favor,[5] the Court finds plaintiffs' on-call time was spent predominantly for the benefit of plaintiffs and does not constitute compensable work hours under the FLSA. First, OG&E's On-Call Policy specifically does not provide for payment for on-call time when not working. The Court finds that plaintiffs constructively agreed to this policy by beginning to work under it, continuing to work under it, and/or accepting their paychecks knowing they would not be paid for the time they were on-call but not working.

Second, the restrictions on plaintiffs' on-call time were not so burdensome as to render the time predominately spent for the benefit of OG&E. While on-call, OG&E expected plaintiffs to remain sober and fit to report to work and to don appropriate safety clothing before responding to a Call-Out. Plaintiffs were also expected to live within thirty minutes of their assigned zone and were expected to respond to Call-Outs within a "reasonable" time – to be in their OG&E truck and driving to the location of a trouble call within a "reasonable" time, which most plaintiffs viewed as within thirty minutes of receiving the call. Plaintiffs, however, were not required to remain on OG&E's premises or to remain at home. Plaintiffs were free to pursue personal activities as long as they were accessible by phone and were able to respond to a trouble call within thirty minutes. The Court finds plaintiffs were able to engage in many personal pursuits while on call, even though

---

[5]Since this Court is finding that OG&E is entitled to summary judgment, the Court has viewed the evidence in the light most favorable to plaintiffs.

they were limited in how far they could travel within the area and there were some logistical difficulties that discouraged, and may even have prevented, some specific activities. Having reviewed the parties' submissions, the Court finds that even though plaintiffs' activities may have been somewhat restricted while they were on-call, the restrictions were not so prohibitive that it can be said that their on-call time was spent predominantly for OG&E's benefit.

Third, the services plaintiffs provided while working were not related at all to what they did while on-call. Plaintiffs' on duty work included repairing and changing transformers, setting poles, stringing electrical wire, and other work related to providing, maintaining, and restoring electricity to customers. Plaintiffs did not perform any of these duties when they were on-call but not working.

Fourth, the frequency of Call-Outs in this case is most analogous to the cases in which on-call time has been determined not to be compensable. Based upon plaintiffs' timesheets, the frequency of the Call-Outs for plaintiffs in this case are as follows: (1) plaintiff Beck received, at most, 1.98 Call-Outs on average per week; the highest number he received in a week was 5, and he often went several weeks or an entire month without a single Call-Out; (2) plaintiff Jackson received, at most, 2.19 Call-Outs on average per week; the highest number he received in a week was 6, and he often went several consecutive weeks without a single Call-Out; (3) plaintiff Muck received, at most, 3.43 Call-Outs on average per week; the highest number he received in a week was 8, and he often went several consecutive weeks without a single Call-Out; (4) plaintiff Harmon received, at most, 2.34 Call-Outs on average per week; the highest number he received in a week was 7, and he often went entire weeks with one or fewer Call-Outs; and (5) plaintiff Beavers received, at most, 3.11 Call-Outs on average per week; the highest number he received in a week was 7, and he often went several weeks or entire months without a single Call-Out. This

8

considerable difference in the number of times plaintiffs were called back as compared to the firefighters in *Renfro*[6] (3-5 callbacks per 24-hour period) and the electronic technicians in *Pabst* (3-5 alarms per night) clearly distinguishes the present case from *Renfro and Pabst* and aligns it squarely with those cases in which the courts found non-compensable on-call time.

Finally, although plaintiffs were on-call at all times, the Court finds plaintiffs still had the ability to engage in personal activities. Plaintiff Beck testified that while on-call, he did yard work and cared for his home; visited with his children and grandchildren; traveled to Ardmore to visit his son or dine at a restaurant with his family; attended his granddaughter's tee-ball games in Marietta; watched television; worked on his personal vehicles; and went camping occasionally at area lakes. Plaintiff Jackson testified that while on-call, but not actively working, he attended several family reunions, took a trip to Arkansas, went on a cruise to the Bahamas, and went camping. Plaintiff Muck testified that while on-call, but not actively working, he went out to eat with his family at restaurants, met his children for lunch occasionally; visited family; operated personal businesses; attended church; tended to his property and livestock; and regularly traveled out of town with his church or family. Plaintiff Harmon testified that while on-call, but not actively working, he went camping at area lakes; went on dates; road his motorcycle; cooked dinner at home; watched television; cared for his yard and home; and cared for his dog. Plaintiff Beavers testified that while on-call, but not actively working, he rode his motorcycle; watched television; ate at restaurants with his wife; took his boat to the lake near his home; took his wife out on dates; visited with his children and grandchildren, who generally came to visit him, but who he traveled to see occasionally; and took care of his home and his rental property. Further, during the relevant time period in this case,

---

[6]*Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir. 1991).

four of the plaintiffs traveled out of the country together for a week, and several of the plaintiffs used significant amounts of paid leave. Additionally, plaintiffs were permitted to trade on-call time, although there is some dispute regarding how easy it was to do.

Accordingly, having considered all of the factors set forth above, the Court finds that even when the facts are considered in the light most favorable to plaintiffs, their on-call time was predominately their own, not OG&E's. The mere fact that plaintiffs were not able to use their on-call time as they wished or that they had to spend some time at home that they otherwise might have spent elsewhere is not sufficient to make on-call time compensable under the FLSA. The Court, therefore, finds that OG&E is entitled to summary judgment in this case.

III.  Conclusion

For the reasons set forth above, the Court DENIES OG&E's Motion to Strike Plaintiffs' Response and Objection to the Declaration of Kenneth McKinzie [docket no. 101] as MOOT, DENIES plaintiffs' Motion for Summary Judgment [docket no. 71], and GRANTS OG&E's Motion for Summary Judgment against Plaintiff John Beck [docket no. 64], OG&E's Motion for Summary Judgment against Plaintiff Danny Jackson [docket no. 65], OG&E's Motion for Summary Judgment against Plaintiff Larry Muck [docket no. 66], OG&E's Motion for Summary Judgment against Plaintiff James Harmon [docket no. 67], and OG&E's Motion for Summary Judgment against Plaintiff Jim Beavers [docket no. 68].

**IT IS SO ORDERED this 3rd day of March, 2017.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE